<div style="text-align: left; writing-mode: vertical">United States District Court<br>Northern District of California</div>

1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 ANNE B.,

Plaintiff,                                      Case No.  20-cv-03340-DMR

8

v.                                               **ORDER ON CROSS MOTIONS FOR**
9                                                          **SUMMARY JUDGMENT**

10 ANDREW SAUL,                                    Re: Dkt. Nos. 20, 26

Defendant.
11

12         Plaintiff Anne B. moves for summary judgment to reverse the Commissioner of the Social

13 Security Administration's ("SSA") final administrative decision, which found Plaintiff not

14 disabled and therefore denied her application for benefits under the Social Security Act, 42 U.S.C.

15 § 401 *et seq*.  The Commissioner cross-moves to affirm.  For the reasons stated below, the court

16 denies Plaintiff's motion and grants the Commissioner's motion.

17 **I.        PROCEDURAL HISTORY**

18         Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on

19 December 11, 2017, alleging disability beginning on March 1, 2006.  Administrative Record

20 ("A.R.") 232-52, 259.  Her application was initially denied on May 2, 2018 and again on

21 reconsideration on September 20, 2018.  A.R. 145-50, 161-66.  An Administrative Law Judge

22 ("ALJ") held a hearing on August 13, 2019 and issued an unfavorable decision on November 1,

23 2019.  A.R. 8-33.[1]

24

25 _____

[1] Plaintiff was insured for the purposes of Title II Social Security Disability Insurance ("SSDI")
26 benefits through December 2010.  In 2011, she filed a claim for Title II benefits alleging disability
starting on March 1, 2006 which was denied.  Plaintiff later withdrew her request for a hearing.
27 A.R. 11, 134-37.  She filed a second claim for Title II benefits in October 2017, again alleging
disability since March 1, 2006.  A.R. 11, 230-31.  In his November 1, 2019 decision, the ALJ
28 dismissed Plaintiff's second Title II claim on the ground that it was barred by res judicata.  A.R.
11.  Plaintiff does not challenge this aspect of the ALJ's decision.  Mot. 1-2.

United States District Court
Northern District of California

The ALJ determined that Plaintiff has the following severe impairments: major depressive disorder; anxiety disorder; borderline intellectual functioning; right ankle lateral ligamentous laxity as compared to left; history of bilateral plantar fasciitis; and Scheuermann's Disease in her teenage years.  A.R. 14.  The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 416.967(b) except the claimant is able to frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds; sit for up to 6 hours in an 8-hour workday, stand and walk 6 hours in an 8-hour workday with normal breaks; and occasional overhead reaching bilaterally.  The claimant should never climb ladders, ropes or scaffolds; but is able to frequently climb ramps and stairs.  The claimant can occasionally stoop and kneel.  The claimant is able to perform simple, routine, repetitive tasks, involving no more than simple work-related decisions and occasional work place changes; can sustain a low stress environment; can have occasional interaction with coworkers, can perform work which would not entail performing teamwork; and can have no more than rare contact (no more than 5% of the workday) with general public.  He [sic] can perform work limited to no fast-paced production requirements.  With regard to concentration persistence and pace, the claimant would be off task 5% of an 8-hour workday.

A.R. 18.

Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform other jobs existing in the economy, including office helper, bagging salvager, and mail clerk, the ALJ concluded that Plaintiff is not disabled.  A.R. 27.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.   ISSUES FOR REVIEW

1.     Did the ALJ err in weighing the medical evidence?

2.     Did the ALJ err in evaluating Plaintiff's credibility?

3.     Did the ALJ err in determining Plaintiff's severe impairments?

4.     Did the ALJ err in determining Plaintiff's RFC?

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the

2

1  Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal

2  error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180

3  F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the

4  record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See*

5  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a

6  preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

7  When performing this analysis, the court must "consider the entire record as a whole and may not

8  affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

9  *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

10      If the evidence reasonably could support two conclusions, the court "may not substitute its

11  judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112

12  F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's

13  decision for harmless error, which exists when it is clear from the record that the ALJ's error was

14  inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d

15  1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

16  **IV.    DISCUSSION**

17      Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence, making a

18  credibility determination, evaluating her severe impairments, and formulating her RFC.

19      **A.    The ALJ's Weighing of the Medical Evidence**

20          **1.    Legal Standard**

21      In the Ninth Circuit, courts employ a hierarchy of deference to medical opinions based on

22  the relation of the doctor to the patient.  Namely, courts distinguish between three types of

23  physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating

24  physicians," those who examine but do not treat the claimant ("examining physicians") and those

25  who neither examine nor treat the claimant ("non-examining physicians").  *Lester v. Chater*, 81

26  F.3d 821, 830 (9th Cir. 1995).  A treating physician's opinion is entitled to more weight than an

27  examining physician's opinion, and an examining physician's opinion is entitled to more weight

28  than a non-examining physician's opinion.  *Id.*

United States District Court
Northern District of California

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. This same standard applies to the rejection of an examining physician's opinion as well. *Id.* at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant).

For applications for Social Security benefits filed before March 27, 2017, "[t]he medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* 20 C.F.R. § 416.927(c)(2) (same).

For applications filed after March 27, 2017, the SSA's regulations and several Social Security Rulings regarding the evaluation of medical opinion evidence have been amended and/or rescinded. This includes SSR 96-2p, "Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions." *See Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, SSR 96-

United States District Court
Northern District of California

2P (S.S.A. Mar. 27, 2017).  Under the new regulations, the SSA will no longer give "any specific evidentiary weight, including controlling weight," to medical opinions or prior administrative medical findings, including those from treating physicians.  20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).  Instead, the SSA must evaluate the "persuasiveness" of all medical opinions based on several factors, including supportability, consistency, the source's relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, whether the source has examined the claimant, any specialization, and other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements."  20 C.F.R. 20 C.F.R. § 404.1520c(a), (c), 20 C.F.R. § 416.920c(a), (c).  "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'"  *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853); *see* 20 C.F.R. § 416.920c(b)(2), 20 C.F.R. § 404.1520c(b)(2).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [they] considered the medical opinions' and 'how persuasive [they] find all of the medical opinions."  *V.W.*, 2020 WL 1505716 at *14 (citation omitted).  "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency."  *Id.* (citing 20 C.F.R. § 416.920c(b)); *see also* 20 C.F.R. § 404.1520c(b).

### 2. Discussion

Plaintiff contends the ALJ erred in finding the opinions of Drs. Kerosky, Rana, Woodcox, and San Valentin unpersuasive or only partially persuasive.

### a. Dr. Maria Kerosky

Maria Kerosky, Ph.D., completed a psychological disability evaluation on April 22, 2019. A.R. 1252-61.  She administered a complete psychological evaluation, history, and mental status examination; administered tests; and reviewed certain records.  A.R. 1252.  According to Dr.

United States District Court
Northern District of California

1    Kerosky, Plaintiff's "interest, motivation, and effort during the exam appeared adequate."  A.R.

2    1253.  Plaintiff described the following activities of daily living that she is able to perform:

3    dressing; taking care of personal hygiene; performing household chores such as washing dishes

4    and doing laundry; using a microwave; doing errands/shopping independently; and driving.  A.R.

5    1254-55.  With respect to the mental status examination, Plaintiff's attitude, motor activity,

6    sensorium, orientation, attention/concentration, speech, thought process, and thought content were

7    within normal limits.  Dr. Kerosky noted that her intellect, memory, fund of knowledge, and

8    insight were "in the borderline range" and/or fair.  She had difficulty with abstract reasoning and

9    judgment and her comprehension was mildly impaired.  Plaintiff's mood was "anxious, restless."

10   A.R. 1255.

11        Dr. Kerosky diagnosed persistent depressive disorder and unspecified anxiety disorder.

12   Additionally, Dr. Kerosky diagnosed borderline intellectual functioning based on test results.

13   A.R. 1257.  Plaintiff's prognosis is "[g]uarded."

14        Dr. Kerosky opined that Plaintiff is able to follow simple one- or two-step instructions, and

15   would have only mild difficulty performing simple, repetitive tasks with required persistence and

16   pace.  She would be mildly to moderately impaired in her ability to interact appropriately with

17   coworkers, supervisors, and the public, and moderately impaired in her ability to maintain

18   adequate sustained attention/concentration during routine workday.  According to Dr. Kerosky,

19   Plaintiff would have moderate to marked difficulty in the following areas: following

20   complex/detailed instructions; performing complex work tasks; adapting to stressors in the

21   workplace setting; and completing a normal workday/workweek without interruptions related to

22   her psychiatric condition.  Additionally, Plaintiff would be markedly impaired in her ability to

23   adapt to changes in a job routine.  A.R. 1257-58.

24        The ALJ summarized the functional limitations assessed by Dr. Kerosky[2] and found only

25   portions of the opinion persuasive.  A.R. 24-25.  According to the ALJ, Dr. Kerosky "overstates

26

27   _____

28   [2] The summary was inaccurate on one point: Dr. Kerosky opined that Plaintiff would be
     moderately to markedly impaired in her ability to adapt to stressors in the workplace setting, and
     not markedly impaired in this area, as the ALJ noted.  *See* A.R. 24, 1257.

United States District Court
Northern District of California

1    the claimant's limitations in her ability to understand, remember, and apply information and in her

2    ability to adapt and manage.  Therefore, her opinion in those areas is not persuasive."  A.R. 25.

3    However, he found her opinion "regarding no more than moderate limitations in social interaction

4    and in the ability to concentrate, persist, or maintain pace" to be persuasive.  A.R. 25.  The ALJ

5    addressed the consistency and supportability of Dr. Kerosky's opinion that Plaintiff has marked

6    limitations in certain areas.  He wrote that "[i]n terms of support, while the claimant had difficulty

7    answering hypotheticals meant to test judgment, she is able to drive and sometimes independently

8    shops and runs errands, which is more consistent with a moderate impairment in both areas,"

9    presumably referring to Plaintiff's "ability to understand, remember, and apply information" and

10   "adapt and manage."  A.R. 25.  He also found that "those marked limitations are not consistent

11   with the medical evidence of record which shows a normal fund of knowledge, intact memory,

12   normal thought content and thought process, and good to excellent impulse control."  A.R. 25

13   (citing A.R. 934, 952).  Finally, he wrote that "even marked impairments in [the areas of

14   understanding, remembering, and applying information and adapting] would be accounted for by

15   limiting [Plaintiff] to work in a low stress environment involving no more than simple work-

16   related decisions and occasional work place changes."  A.R. 25.

17        The court finds that the ALJ did not err in discounting portions of Dr. Kerosky's opinion.

18   First, he adhered to the requirements for weighing medical opinions set forth in the governing

19   regulations, since he addressed the consistency and supportability of her opinion.  *See* 20 C.F.R. §

20   416.920c(b)(2), 20 C.F.R. § 404.1520c(b)(2).  Moreover, substantial evidence supports his

21   assessment of consistency and supportability.  The records the ALJ specifically cited as

22   inconsistent with Dr. Kerosky's assessment of marked limitations in certain areas, A.R. 934 and

23   952, support his reasoning.  A.R. 934 is part of the record of a June 2, 2017 mental health

24   evaluation by Jianan Hu, a resident at Kaiser, *see* A.R. 931-36, which was the result of Plaintiff's

25   request for treatment for depression on May 18, 2017.  A.R. 926.  As part of the evaluation, Dr.

26   Hu performed a mental status examination.  All categories were within normal limits except for

27   mood, which was anxious; affect, which was appropriate to mood; and speech, which was normal

28   but "rambling at times."  A.R. 934.  Dr. Hu noted that Plaintiff's thought process, thought content,

United States District Court
Northern District of California

7

1    attention, concentration, memory, and fund of knowledge were normal, and her impulse control

2    was "good."  A.R. 934.

3          The other record cited by the ALJ, A.R. 952, is part of the record of a June 19, 2017

4    psychiatrist intake evaluation of Plaintiff by Michael David Sands, M.D., the purpose of which

5    was "to consider treating [Plaintiff] with medications."  A.R. 948; *see* A.R. 948-952.  Dr. Sands

6    performed a mental status examination.  With the exception of Plaintiff's mood, which he noted

7    was "mildly depressed," all categories were within normal limits.  Attention, concentration,

8    memory, and fund of knowledge were "grossly intact" and her impulse control was "excellent."

9    A.R. 952.  Dr. Sands declined to prescribe medications, writing, "[n]o medications, for now.

10   Symptoms are not severe enough."  A.R. 953.  He wrote that Plaintiff "does not have severe

11   depression.  Seems more like dysthymia picture, avoidant features."  A.R. 949.

12         Other evidence in the record supports the ALJ's conclusion that Dr. Kerosky's opinion that

13   Plaintiff is markedly limited in some areas is not consistent or supported by the record.  As noted,

14   Plaintiff requested treatment for depression in May 2017.  She underwent individual

15   psychotherapy and group therapy from June 2017 through February 2018, ending therapy after

16   informing her provider "that she doesn't have any other issues she needs to address at this time."

17   A.R. 353-398, 926-1065; *see* A.R. 1065.  At her final session, her provider noted, "[g]oals are

18   completed."  A.R. 1066.  In 2018, Plaintiff started taking Prozac and reported "significant

19   improvement for her symptoms of persistent depressive disorder" on the medication.   A.R. 1125.

20   It appears that she then switched to Lexapro, which caused side effects, but after she stopped

21   taking Lexapro in September 2018, she reported that her "mood and anxiety are okay off of

22   Lexapro." A.R. 1169-70.  Plaintiff's mental health treatment providers consistently noted mental

23   status examinations that were "normal," with the exception of Plaintiff's mood, which was

24   typically noted as depressed or anxious, and her corresponding affect.  *See* A.R. 354, 360-61, 364-

25   65, 368-69, 389-90, 394, 398, 934, 1037, 1064, 1098, 1127, 1173, 1176.

26         Dr. Kerosky's opinion is also contrary to the opinion by Faith Tobias, Ph.D., who

27   performed a psychological consultative examination on March 17, 2018.  A.R. 1130-34.  Like Dr.

28   Kerosky, Dr. Tobias performed a complete psychological evaluation, history, and mental status

United States District Court
Northern District of California

8

examination and administered tests.  A.R. 1130.  Dr. Tobias diagnosed Plaintiff with probable intellectual functioning within the borderline impaired to low average range; rule out specific learning disorder; persistent depressive disorder; and unspecified anxiety disorder.  A.R. 1132. Dr. Tobias opined that Plaintiff is mildly to moderately impaired in the areas of following and remembering complex/detailed instructions; withstanding the stress of a routine workday; and maintaining emotional stability/predictability.  Plaintiff is mildly impaired in the ability to maintain adequate attention and concentration.  She has no impairment in her ability to adapt to changes in a job routine.  A.R. 1133.  The ALJ found Dr. Tobias's opinion persuasive because it "is supported by a detailed analysis that highlights relevant evidence including valid test results, no language comprehension difficulties, and adequate hygiene."  A.R. 24.  He also found that Dr. Tobias's opinion "is generally consistent with the objective medical record including low IQ scores, but a normal fund of knowledge, a pleasant and cooperative demeanor, normal attention and concentration, good insight and judgment and a mildly depressed and anxious mood."  A.R. 24 (citing Dr. Kerosky's report and A.R. 934, 952, 1055).

Finally, Dr. Kerosky's opinion is also contrary to the opinions by the State agency medical consultants, both of whom concluded that Plaintiff had no more than moderate impairments with respect to any mental limitations.  *See* A.R. 78-80 (Apr. 17, 2018 opinion of James Pinkson, Ph.D.); 109-111 (Sept. 5, 2018 opinion of R. Paxton M.D.).

Ultimately, Plaintiff disputes the ALJ's determination that Dr. Tobias's opinion was more persuasive than Dr. Kerosky's.  However, the ALJ is responsible for determining credibility of medical testimony and resolving conflicting evidence and ambiguities.  *See Reddick*, 157 F.3d at 722.  Further, if the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson*, 112 F.3d at 1066.  The court finds that the ALJ did not err with respect to Dr. Kerosky's opinion.

**b.      Dr. San Valentin**

On January 22, 2018, Pura Maria San Valentin, M.D., wrote a letter that stated in full: "Due to her foot condition, my patient is not able to stand for prolonged periods of time.  This has been a chronic condition for many years."  A.R. 1290.  Based on a treatment note dated January

United States District Court
Northern District of California

22, 2018, it appears that Dr. San Valentin wrote the letter at Plaintiff's request to use at a theme park to obtain accommodations.  A.R. 1287.

The ALJ summarized Dr. San Valentin's letter and stated that he considered it and found it "not persuasive."  A.R. 25.  He explained that Dr. San Valentin "gave no supporting reasons in the letter" for the conclusion that Plaintiff is not able to stand for prolonged periods of time of time and that "treatment notes are not supportive."  A.R. 25.  He noted that even though Plaintiff "used a letter regarding chronic foot pain, she was still able to take her son to Disneyland in December 2018" and "does not use an assistive medical device."  A.R. 25 (citing A.R. 1501); *see also* A.R. 54-55 (testimony that she does not use an assistive device).  The ALJ also reasoned that Dr. San Valentin's statement was inconsistent with the objective medical record.  A.R. 25.

The court finds that the ALJ did not err with respect to Dr. San Valentin's opinion.  As set forth above, the ALJ addressed the persuasiveness of the opinion with reference to supportability and consistency.  Substantial evidence supports the ALJ's conclusions on those issues.  Specifically, the treatment records corresponding to the date of the Dr. San Valentin's letter, A.R. 1287-1291, contain no reference to Plaintiff's feet or ability to stand.  In fact, none of Dr. San Valentin's treatment notes in the record reference the condition of her feet; instead, they show treatment for other issues, such as hypothyroidism and sinus infections.  *See, e.g.*, A.R. 405, 414, 430, 1447.  Therefore, the basis for Dr. San Valentin's opinion is not evident from a review of her own records of treating Plaintiff.  The ALJ also considered the consistency of Dr. San Valentin's assessment with the medical record, noting "an unremarkable right ankle x-ray in 2004" and records reflecting a "consistently normal gait."  A.R. 25 (citing A.R. 1080, 952, 1173, and 1409).  Other records support the ALJ's finding that Dr. San Valentin's assessment was inconsistent with the objective medical record.  *See* A.R. 1080 (noting "unremarkable" right ankle x-ray dated Jan. 10, 2015); 1182 (noting that Plaintiff was "ambulatory with steady gait"); 1253 ("[n]o obvious gait/gross movement abnormalities were noted during the exam").  The court finds no error.

### c.    Dr. Woodcox

The record contains several forms by Plaintiff's podiatrist, Larry Woodcox, DPM, DC, regarding functional limitations related to her feet.  A.R. 1274-86.  Dr. Woodcox completed

functional assessments in January 2018 (A.R. 1273-75), January 2017 (A.R. 1279), October 2013 (A.R. 1280-81), June 2012 (A.R. 1282-84), and "patient treatment verifications" in April 2011 and February 2012 (A.R. 1285-86).  There is also an undated assessment by Dr. Woodcox in the record.  A.R. 1276-78.

In the January 2018 assessment, Dr. Woodcox opined that Plaintiff can stand/walk for 0-2 hours in an eight-hour workday and sit for 0-2 hours in an eight-hour workday without further elaboration.  A.R. 1274.  He stated that Plaintiff is restricted in using her feet for repetitive movements, such as in operating foot controls for the following reason: "Has severe [right] foot/ankle injury, resulting [in] [left] foot injury compensating for [right] foot.  Back injury [secondary] to primary injury."  A.R. 1274.  Dr. Woodcox also opined that Plaintiff can lift and carry 10 pounds frequently and 15 pounds infrequently, and that she can occasionally climb, balance, stoop, kneel, crouch, crawl, and reach.  A.R. 1275.  Dr. Woodcox assessed identical restrictions in 2012 and 2013.  A.R. 1280-81, 1283.  In the April 2011 patient treatment verification, he noted that Plaintiff "is currently being seen in reference to" a "lumbar injury" and "foot/ankle injury" in the left and right feet.  A.R. 1285.

The ALJ wrote that Dr. Woodcox's opinion about Plaintiff's limitations "is not well-supported by the rationale that the claimant has a foot/ankle injury resulting in her left foot compensating for the right foot as well as a back injury," citing the January 2018 assessment.  A.R. 25 (citing A.R. 1274).  He also wrote that "[t]he opinion is not consistent with the objective medical record including normal gait."  A.R. 25 (citing A.R. 952, 1173, 1186, 1409).  Therefore, the ALJ concluded, "the opinion is not persuasive."  A.R. 25.

Plaintiff concedes that the record contains only one page of treatment notes by Dr. Woodcox. Pl.'s Mot. 13 (citing A.R. 920).  This record, which is largely illegible, appears to reflect treatment on four dates: February 9, 2016, January 31, 2017, January 30, 2018, and February 8, 2018.  According to Plaintiff, the ALJ should have requested Dr. Woodcox's longitudinal treatment records or afforded Plaintiff's advocate time to obtain additional evidence, noting that the ALJ rejected her advocate's request at the hearing to obtain additional evidence from Dr. Woodcox.  She also argues that the objective medical record supports Dr. Woodcox's

United States District Court
Northern District of California

1    assessment that she is significantly limited in her ability to stand and walk due to issues with her

2    feet, ankle, and back.  Pl.'s Mot. 13.

3       The ALJ has an independent duty to fully develop the record.  42 U.S.C. § 423(d)(5)(B);

4    20 C.F.R. § 404.1512(b)(1).  "This duty extends to the represented as well as to the unrepresented

5    claimant."  *Tonapetyan*, 242 F.3d at 1150 (citation omitted).  "Ambiguous evidence, or the ALJ's

6    own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers

7    the ALJ's duty to 'conduct an appropriate inquiry,'" which may include "subpoenaing the

8    claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing,

9    or keeping the record open after the hearing to allow supplementation of the record."  *Id.* (citations

10    omitted).  However, "[a] specific finding of ambiguity or inadequacy of the record is not necessary

11    to trigger this duty to inquire, where the record establishes ambiguity or inadequacy."  *McLeod v.*

12    *Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (citing *Tonapetyan*, 242 F.3d at 1150).

13       Plaintiff does not argue, and the court does not find, that Dr. Woodcox's opinions are

14    "ambiguous."  Nor does Plaintiff explain how the record is inadequate to allow the ALJ to

15    evaluate Dr. Woodcox's opinions.  The court notes that the record contains reports from an

16    orthopedic consultative examiner (A.R. 1080-84) and a consulting internist (A.R. 1262-71) who

17    offered opinions about Plaintiff's ability to stand and walk, as well as a significant number of

18    records from Plaintiff's own providers (A.R. 345-905, 1287-2056).  Moreover, there is nothing in

19    the record suggesting the existence of additional treatment records by Dr. Woodcox that could

20    assist the ALJ in evaluating his opinions; in her pre-hearing brief, Plaintiff asked the ALJ to "leave

21    the record open for a physical functional capacity form from Dr. Woodcox."  A.R. 330.  The ALJ

22    denied this request since the doctor had not already performed the evaluation.  A.R. 38 ("inasmuch

23    as it doesn't exist yet, I'm not inclined to hold the record open for a document that doesn't exist.").

24    Accordingly, the ALJ had no duty to further develop the record with respect to Dr. Woodcox.

25       The court finds no error with respect to the ALJ's treatment of Dr. Woodcox's opinions,

26    since Dr. Woodcox provided no support for his conclusions such as diagnoses, detail about

27    Plaintiff's range of motion or gait, testing results, or other objective medical data.  Further, the

28    ALJ found that the opinions were not consistent with other records showing Plaintiff's normal

1    gait.  Substantial evidence supports the ALJ's characterization and interpretation of these records.

2                           d.       **Dr. Rana**

3         On April 25, 2019, Farah M. Rana, M.D., performed an internal medicine evaluation of

4    Plaintiff.  A.R. 1262-70.  Dr. Rana reviewed records, took Plaintiff's history, and performed an

5    examination.

6         Dr. Rana found mild-to-moderate thoracic kyphosis and tenderness around her thoracic and

7    lumbosacral spine, as well as reduced range of motion.  A straight leg raising test while sitting was

8    negative.  A.R. 1263-64.  Dr. Rana noted tenderness in Plaintiff's right ankle joint but a normal

9    range of motion.  Plaintiff also had tenderness on the plantar surfaces of both feet, but all other

10   joints were nontender, with full range of motion, no inflammation, and no swelling.  A.R. 1264.

11   Dr. Rana noted that Plaintiff was walking with a mild limp and favored her right foot but did not

12   use an assistive device.  She had full motor strength and reflexes and no sensory deficit.  A.R.

13   1264.

14        Dr. Rana diagnosed a history of Scheuermann's disease, chronic back pain, mild to

15   moderate kyphosis, and probable degenerative disc/joint disease.  A.R. 1264.  She also diagnosed

16   chronic right ankle pain (probable arthritis), and a history of bilateral plantar fasciitis.  A.R. 1264.

17   Dr. Rana also diagnosed headaches, which she wrote was "probably . . . a combination of

18   stress/tension type headaches and migraine headaches," and a history of depression.  A.R. 1264.

19        Dr. Rana opined that Plaintiff can stand and walk for five hours in an eight-hour workday

20   and can sit for six hours in an eight-hour workday.  A.R. 1264.  Plaintiff can carry 10 pounds

21   frequently and 20 pounds occasionally, and can stoop, bend, kneel, crouch, and climb

22   occasionally.  She is able to handle, manipulate, feel, and finger objects "without any problem."

23   A.R. 1264.

24        The ALJ found the functional limitations Dr. Rana assessed were persuasive, except for the

25   limitation to five hours of standing and walking and only occasional climbing of ramps and stairs.

26   The ALJ found Dr. Rana did not "explain her findings with supporting evidence" and they were

27   inconsistent with the record.  A.R. 24.  The ALJ instead assessed a six-hour standing and walking

28   limitation and frequent climbing of ramps and stairs.  A.R. 18.

United States District Court
Northern District of California

1    The ALJ did not err with respect to Dr. Rana's opinions that Plaintiff is able to stand and

2   walk for only five hours in an eight-hour workday and climb ramps and stairs occasionally.  The

3   ALJ addressed the persuasiveness of these opinions with reference to supportability and

4   consistency, and substantial evidence supports the ALJ's determination.  The ALJ noted Dr.

5   Rana's negative Romberg's and straight leg raising tests for balance and nerve impingement issues

6   that might suggest greater limitations.  A.R. 24 (citing A.R. 1263-64).  He also noted Plaintiff's

7   unremarkable x-rays, consistently normal gait, normal muscle strength and sensation, negative

8   straight leg tests, overall normal range of motion, and a decreased range of motion at her

9   shoulders.  A.R. 24 (citing A.R. 1080, 952, 1173, 1186, 1409, 1083, 1168, 1264, 1167, 1084).

10    Additionally, Grace Maloney, M.D., examined Plaintiff on March 3, 2018 and reviewed

11   her records.  A.R. 1080-84.  Dr. Maloney diagnosed kyphosis, decreased range of motion at the

12   shoulders, and right ankle lateral ligamentous laxity as compared to left, and opined that Plaintiff

13   had no limitations with standing and walking.  A.R. 1083-84; *see* A.R. 23-24.  The ALJ also

14   observed that both state agency physicians opined that Plaintiff can stand and walk for six hours in

15   an eight-hour workday.  A.R. 23, 76-77, 107-09.  Substantial evidence supports the ALJ's

16   treatment of Dr. Rana's opinions.

17    **B.    The ALJ's Credibility Determination**

18        **1.    Legal Standard**

19    In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to

20   resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the

21   ALJ's conclusion must be upheld."  *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470,

22   1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of

23   disabling pain" or other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

24   1989) (citing 42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective

25   symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*,

26   464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on

27   general findings, but "must specifically identify what testimony is credible and what evidence

28   undermines the claimant's complaints."  *Id.* at 972 (quotations omitted); *see also Thomas v.*

United States District Court
Northern District of California

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Smith v. Kijakazi*, ---F.4th---, No. 20-35487, 2021 WL 4486998, at *2 (9th Cir. Oct. 1, 2021) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).

Then, absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see Smith*, 2021 WL 4486998, at *2 (noting that the "specific, clear and convincing" standard "is the most demanding required in Social Security cases" (citation and quotation marks omitted)). Under this standard, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons,

1    supported by evidence in the record, to support that credibility determination." *Smith*, 2021 WL

2    4486998, at *3 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015)).

3              **2.     Discussion**

4              The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

5    expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the

6    intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

7    medical evidence and other evidence in the record for the reasons explained in this decision."

8    A.R. 18.  The ALJ then addressed Plaintiff's testimony about her physical and mental

9    impairments.

10             As to her physical impairments, the ALJ noted that Plaintiff testified that due to "a bad foot

11   on her right and because of walking funny," problems with her left foot, as well as plantar fasciitis,

12   Scheuermann's disease, and arthritis, "she has pain all the time and some days she cannot walk as

13   she is not steady and has to hold onto the walls." A.R. 19; 48.  Despite this testimony, the ALJ

14   noted that Plaintiff does not use an assistive device; lives with her ten-year-old son and husband

15   and drives her son to school every day; cooks when her husband is not at home; does laundry,

16   sweeps, and shops for groceries; drives; and takes public transportation. A.R. 19.  The ALJ also

17   noted that Plaintiff reported other activities that were not "consistent with a debilitating physical

18   impairment." A.R. 20.  These included taking a family trip to Portland and Seattle in 2017.  A.R.

19   20 (citing A.R. 949).  Additionally, Plaintiff discussed with her therapist resuming self-care

20   activities and included "walking" as one such activity; reported that she "gets exercise by walking

21   and passing out flyers for her husband's real estate business"; reported "[w]orking at school,"

22   which may have been a reference to her son's school; and stated in October 2018 that one of her

23   treatment goals for physical therapy was to be "[a]ble to take her son to Disneyland and be able to

24   'keep up with him' in 12 weeks."  Plaintiff then traveled to Disneyland in January 2019.  A.R. 20

25   (citing A.R. 1036, 1063, 1339, 1166, 1527).  As the ALJ noted, following the Disneyland trip,

26   Plaintiff reported "lower sternal tightness/pressure like pain" radiating to the mid-back and

27   underarm; her provider recommended ibuprofen.  A.R. 20-21 (citing A.R. 1527-1529).  In addition

28   to these activities, the ALJ also found that the objective medical findings, medical history and

United States District Court
Northern District of California

degree of medical treatment required did not support Plaintiff's allegations and discussed the same at length.  A.R. 19-20, 23-25.  The court finds that the ALJ provided clear and convincing reasons that were supported by evidence to discount this portion of Plaintiff's testimony.

Regarding Plaintiff's testimony about her mental impairments, the ALJ noted that Plaintiff "testified that she was diagnosed with a learning disability in third grade and attended college through a disability program."  A.R. 19.  He also described her testimony that "she has a hard time functioning or doing anything," that "her energy level is low and she does not interact with people," and that she experiences "anxiety and panic attacks."  A.R. 19.  The ALJ then noted that "the objective findings of this case are not consistent with the level of disabling symptoms and limitations alleged by [Plaintiff]" in connection with her diagnoses of depressive disorder, anxiety disorder, and "'probable' intellectual functioning within the borderline impaired to the low average range."  A.R. 21.  The ALJ proceeded to discuss Plaintiff's mental health treatment history, including "stated goals in therapy [that] were not consistent with a debilitating mental impairment."  A.R. 21.  These included Plaintiff reporting that "she would like to go back to school, complete a degree in early childhood education, and work in that field," and that she "might look for jobs in that field in the future."  A.R. 21 (citing A.R. 932, 950).

The ALJ also found that Plaintiff's activities were not consistent with a debilitating mental impairment, including taking a family trip to Portland and Seattle, going out to restaurants and having parties, and going on a family trip to Disneyland.  A.R. 21 (citing A.R. 949, 992-93, 1063, 1527).  The ALJ then discussed Plaintiff's history of mental health treatment, including largely normal mental status examinations, Plaintiff's "significant progress in therapy" and her own reports of improvement, and psychological evaluations.  A.R. 21-22.  The court concludes that the ALJ satisfied the "specific, clear and convincing" reasons standard for discounting the portion of Plaintiff's testimony addressing her mental health limitations.

In sum, the court finds that the ALJ did not err with respect to his credibility determination.

C.   **The ALJ's Determination of Plaintiff's Severe Impairments**

1.   **Legal Standard**

At step two of the five-step sequential evaluation for disability claims, the ALJ must determine whether the claimant has one or more severe impairments that significantly limit a claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c).  "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Smolen*, 80 F.3d at 1290 (quotation omitted).  The Ninth Circuit has held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Id.* (citation omitted).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."  *Id.* (quotations omitted).  A severe impairment "must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 416.921, and the ALJ must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity."  *Smolen*, 80 F.3d at 1290 (citations omitted).  In addition, when assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments, both severe and non-severe.  20 C.F.R. §§ 416.920(e), 416.945; *see Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1164 (9th Cir. 2008); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments [because] limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.").

2.   **Discussion**

As noted, the ALJ determined that Plaintiff has the following severe impairments: major depressive disorder; anxiety disorder; borderline intellectual functioning; right ankle lateral ligamentous laxity as compared to left; history of bilateral plantar fasciitis; and Scheuermann's Disease in her teenage years.  A.R. 14.  Plaintiff argues that the ALJ erred by not finding that her chronic headaches, sleep apnea, limited range of motion in shoulders, chronic back and shoulder

1   pain, and chronic ankle pain were severe impairments.  Pl.'s Mot. 21.

2          The ALJ discussed Plaintiff's headaches and sleep apnea together.  He noted that Plaintiff

3   had been diagnosed with "obstructive sleep apnea" and "stress/tension headaches and migraine

4   headaches."  A.R. 14 (citing A.R. 921, 950).  The ALJ concluded that these impairments are "non-

5   severe as there is no evidence of any ongoing functional limitations from these impairments due to

6   the limited nature of the complaints, the good response to treatment, or the lack of any evidence of

7   any functional limitations."  A.R. 14.  With respect to the headaches, the ALJ noted that they

8   "appear to be managed with Tylenol and rest."  A.R. 14 (citing A.R. 316 (Plaintiff's list of

9   medications, including Tylenol for headaches), 1186 (list of current medications, including

10  acetaminophen and ibuprofen), 1263 (list of current medications including Motrin and Tylenol)).

11  The court finds that the ALJ did not err with respect to his determination regarding Plaintiff's

12  headaches.  At her April 2019 consultative examination with Dr. Rana, she reported "having 4-5

13  headaches in a week," some of which "are dull headaches that are all over."  On other occasions

14  "she gets sensitive to light and noise and she becomes nauseated," and "[s]he just takes Tylenol as

15  needed and rests," consistent with the ALJ's assessment.  A.R. 1263.  The record contains

16  evidence that Plaintiff was prescribed Vicodin for pain in 2007 after complaining of headaches,

17  even though the provider noted that the headaches were "[o]ften resp[onsive] to [over the counter

18  medications]."  A.R. 604.  Other than that note, the only other references to treatment for

19  headaches consists of references to Tylenol, as the ALJ observed.  No physician assessed

20  functional limitations from headaches.  Nonetheless, Plaintiff argues that her headaches are "a

21  functional limitation that would significantly affect her ability to stay on task throughout the

22  week."  Pl.'s Mot. 20.  The ALJ included a provision in the RFC that Plaintiff "would be off task

23  5% of an 8-hour workday."  A.R. 18.  Plaintiff does not address this limitation and does not

24  explain how it fails to address any limitations associated with her headaches.  The court finds that

25  the ALJ did not err with respect to Plaintiff's headaches.

26          As to sleep apnea, the ALJ noted that Plaintiff "reportedly had a c-pap machine, but did

27  not use it" and that "there is no sign of ongoing neurological issues related to this condition."

28  A.R. 14 (citing A.R. 1063, 1075).  Plaintiff notes that she reported "broken sleep" due to

1   obstructive sleep apnea and that she "was unable to tolerate it due to an upper respiratory

2   infection." Pl.'s Mot. 20 (citing A.R. 1075, "is not using cpapa as has u.r.i."). However,

3   Plaintiff's sleep apnea was diagnosed as "mild," A.R. 370, and she cites no evidence that her sleep

4   apnea causes any limitations with respect to her functioning. The court finds no error.

5           As to Plaintiff's limited range of motion in her shoulders, chronic back and shoulder pain,

6   and chronic ankle pain, the ALJ wrote that these impairments were "not medically determinable . .

7   . due to a lack of objective evidence," since "[a] medically determinable impairment may not be

8   established solely on the basis of symptoms alone, or on the claimant's allegations regarding

9   symptomatology[.]" A.R. 14 (citing 20 C.F.R. § 416.929(b)). Despite this conclusion, the ALJ

10  treated Plaintiff's limited range of motion in her shoulders and chronic back, shoulder, and ankle

11  pain as medically determinable impairments, considering their effect on Plaintiff's functioning for

12  purposes of the RFC. Specifically, the ALJ limited Plaintiff's lifting and reaching to only

13  "occasional overhead reaching bilaterally" and "light work" involving frequently lifting and

14  carrying only 10 pounds and occasionally lifting and carrying 20 pounds, given the reduced range

15  of motion in Plaintiff's shoulders. A.R. 18, 21 ("considering decreased range of motion at her

16  shoulders . . . the claimant is able to frequently lift and/or carry 10 pounds and occasionally lift

17  and/or carry 20 pounds"), 23 (noting "normal strength" and "decreased range of motion at her

18  shoulders"; "decreased range of motion . . . in support of reaching and postural limitations").

19          As to Plaintiff's chronic back pain, the ALJ noted that the back pain was a symptom of

20  Scheuermann's kyphosis, which the ALJ found to be a severe impairment. *See* A.R. 14, 19

21  (describing Plaintiff's testimony about pain caused by her back condition). The ALJ accounted

22  for Plaintiff's back pain by limiting her to light work with occasional postural maneuvers. A.R.

23  19, 21. Finally, as to Plaintiff's chronic ankle pain, the ALJ assessed a severe impairment of right

24  ankle lateral ligamentous laxity as compared to left. The ALJ extensively analyzed the objective

25  medical evidence and medical opinion evidence regarding Plaintiff's ability to stand and walk

26  given her ankle pain. A.R. 18, 23-25.

27          In sum, even though the ALJ found that Plaintiff's limited range of motion in her

28  shoulders, chronic back and shoulder pain, and chronic ankle pain were non-severe impairments,

United States District Court
Northern District of California

20

he considered each of these conditions and their resulting limitations on Plaintiff's functioning in connection with his determination of her RFC at step four.  Therefore, to the extent that he erred in failing to find them severe, any error was harmless.  *See, e.g., Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that ALJ's determination that impairment was non-severe at step 2 was harmless because the ALJ "considered any limitations posed by the [condition] at Step 4.").

### D.   The ALJ's Assessment of Plaintiff's RFC

Finally, Plaintiff argues that the ALJ erred in assessing her RFC.  This argument is based on her previous contentions that the ALJ erred with respect to the medical opinion evidence and Plaintiff's testimony.  *See* Pl.'s Mot. 22-23 ("[t]he ALJ's errors determining Plaintiff's RFC and finding that she is capable of performing other work stem from his failure to properly consider the medical opinion evidence and Plaintiff's testimony.").  Since the court finds that the ALJ did not err in those respects, it finds no error in his assessment of the RFC.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied.  The Commissioner's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: October 19, 2021



Donna M. Ryu
United States Magistrate Judge
Judge Donna M. Ryu